UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARRIN GRUENBERG,

        Plaintiff,

  v.                                     Case No. 10-C-749

RICHARD SCHNEITER, et al.,

        Defendants.

**DECISION AND ORDER**

Plaintiff filed this action under 42 U.S.C. § 1983 alleging that his civil rights were violated by prison staff when they required him to serve eleven and one-half months in segregation without outdoor recreation privileges. He alleges that these restrictions caused him to suffer depression, headaches, emotional suffering, muscle atrophy, lethargy, and other physical ailments. (Compl., ¶ 44.) Defendants have moved for summary judgment, and for the reasons given below I conclude the motion should be granted.

**I. Background**

Plaintiff Darrin Gruenberg was housed at Green Bay Correctional Institution between February 2008 and February 2010. According to the Defendants, Gruenberg is among the class of inmates most difficult to control: since his incarceration began in 1999, he has received some 238 conduct reports for offenses ranging from disrespect to staff to stealing a guard's keys and then swallowing them. (DPFOF ¶ 28.) His behavior has landed him in segregated confinement at various institutions for almost the entirety of the last eight years. (DPFOF ¶ 28.) While at GBCI,

Gruenberg received 28 conduct reports while housed in the segregation unit, and eight of these reports resulted in the loss of outdoor recreation privileges. I describe these conduct reports below.

The first of these incidents arose in February 2009, when Gruenberg ripped the radio jack from the wall of his cell, destroying the radio system. After a hearing, Defendant Lt. Stevens imposed a 60-day loss of recreation, which Gruenberg appealed. The punishment was affirmed, and Gruenberg served it from March 12 to May 10, 2009. While serving that punishment, Gruenberg received another conduct report as a result of threatening and abusive missives he sent to GBCI's dental staff, which included such uncongenial sentiments as "I got your home address" and "your family is vulnerable." (DPFOF ¶ 37.) Gruenberg did not attend the hearing on this conduct report and received another 60-day loss of recreation, which he served from May 11 to July 12, 2009. He appealed to the warden, arguing that loss of recreation should not be imposed consecutively because there was nothing within the offender report requiring that it be a consecutively imposed punishment. The warden affirmed.

On April 7, 2009, Gruenberg received another conduct report, this time for deliberately plugging his toilet and causing it to spill over into his and other cells. Lt. Campbell imposed a punishment of 30 days' loss of recreation. In doing so, he noted that Gruenberg had received 25 conduct reports within the preceding year. (DPFOF ¶ 43.) Gruenberg served this time between July 13 and August 12, 2009.

On July 31, 2009, Gruenberg received a conduct report for the disrespectful nature of his appeal of an unrelated disciplinary sanction. In that appeal, addressed to the warden, he wrote: "I hope and pray you affirm the hearing officer's decision and sentence because it will confirm you sit down to piss and bleed from between your legs once a month like I always suspected." (DPFOF

¶ 47.) Capt. Schultz was the hearing officer and imposed another 60-day loss of recreation, which Gruenberg served from August 13 to October 11, 2009. Gruenberg did not appeal to the warden, he says, because the offense was disrespect to the warden himself. (Compl., ¶ 14.)

August 11 produced the next conduct report. Gruenberg was written up for disruptive conduct and disobeying orders after being ordered to stop yelling at another inmate. Gruenberg did not attend the hearing (the Defendants say he refused to attend) and was given another 60-day loss of recreation by Capt. Schultz. He appealed to the warden, claiming he did not refuse to attend the hearing. (This appeal, Ex. 1015, does not appear to be in the record.) The warden affirmed the punishment. The Defendants state that this incident was merely one of many in which Gruenberg refused to obey orders, and they note that cell extraction teams and pepper spray were often required to gain compliance with their orders.

Two days later, on August 13, Gruenberg received another conduct report for disruptive conduct. This time, he had yelled at a correctional officer to "get his fucking shit" and refused to stop yelling, despite the officer's order to quiet down. Gruenberg refused to attend the hearing but submitted a written statement in which he repeatedly mocked the officer's name and questioned his intelligence. (These efforts resulted in their own conduct report.) Capt. Schultz imposed another 60-day loss of recreation. On appeal to the deputy warden, Gruenberg questioned why the loss of recreation should be served consecutively because nothing within the administrative code required consecutive service and the disciplinary order did not explicitly order consecutive service of the loss of recreation. (Dkt. 41, Ex. 1016 at 3.) (Nowhere does Gruenberg explain why he believed identical loss-of-recreation punishment should be served concurrently. The only way such a punishment makes sense is to impose it consecutively.)

3

A conduct report was issued on September 29 after Gruenberg attempted to steal an officer's keys while the officer was delivering breakfast. Gruenberg told the officer, "next time I'll rip those keys right out of your hand, you fag, stupid ass bitch." (DPFOF ¶ 62.) Gruenberg did not attend the hearing, but he submitted a written statement in which he blamed the officer for not following proper procedures and making his keys potentially accessible. Gruenberg stated that in the future he would "make a good faith effort to gain control of staff's security keys when they are right there by the open trap door." (Dkt. # 41, Ex. 1023 at 5-6.) (In a previous case in this district, Gruenberg sued prison officials for their response to his condition after he stole an officer's keys and swallowed them.) Based on the charge and Gruenberg's previous conduct, Capt. Schultz imposed another 60-day loss of segregation. In his appeal, Gruenberg again questioned why the officer had allowed his keys to be positioned in a fashion such that Gruenberg might be able to grasp them. (*Id.* at 3.) He challenged the punishment as harsh and arbitrary, but that was the extent of his appeal. Gruenberg served only part of the segregation before being transferred to Columbia Correctional in February 2010.

All told, during the eleven-plus months Gruenberg was on loss-of-recreation status, he received conduct reports for 22 separate violations, many of which are not detailed above because they did not result in loss of recreation. These violations included two instances of exposing himself to officers, an additional attempt to assault a guard and steal keys (ECF No. 41, Ex. 1025), and numerous other instances of misconduct, destruction of property and abusive behavior, most of which he did not deny. Instead, his appeals and written statements are replete with legalistic objections but few denials. (Blaming the officer for not following procedure – as though that would

4

justify his attempt to steal keys – is just one example.) I will now turn to the Defendants' arguments.

**II. Exhaustion of Administrative Remedies**

I begin with the Defendants' principal (and dispositive) argument that Gruenberg failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is to allow prison officials a swift and early opportunity to cure any constitutional violations they are alerted to. This not only provides the possibility of immediate relief to the inmate, it often obviates the need for federal courts to become involved in prison administration. Thus, if an inmate appeals a disciplinary report citing Grounds A and B, and then files a civil lawsuit based on Ground C, he has not properly exhausted his administrative remedies because he never informed prison officials about the basis of the complaint that gave rise to his lawsuit. Exhaustion is also required even if the inmate believes an appeal will be futile. *Booth v. Churner,* 532 U.S. 731 (2001). "The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins." *Cannon v. Washington,* 418 F.3d 714, 719 (7th Cir. 2005).

None of Gruenberg's appeals alerted prison authorities to the substance of the complaint he now brings in federal court. In some cases, Gruenberg failed to appeal at all. As noted above, exhaustion is required even if the inmate believes it will be futile. And although Gruenberg repeatedly challenged his punishment on technical grounds, and he further claimed such punishments were "arbitrary" or too harsh, he never told officials that he was experiencing mental and physical problems as a result of the restriction on outdoor activities. Under Seventh Circuit law cited in this Court's screening order, prison officials were entitled to view each 30-day or 60-day

5

punishment as separate punishments, not "stacked" ones. *Pearson v. Ramos,* 237 F.3d 881, 886 (7th Cir. 2001) ("Every disciplinary sanction, like every sentence, must be treated separately, not cumulatively, for purposes of determining whether it is cruel and unusual.") Restrictions of less than 90 days do not implicate Eighth Amendment concerns, *id.* at 884, and thus each punishment was constitutionally sound. The only way the Eighth Amendment would be triggered is if the prison staff actually had knowledge that an inmate was experiencing serious medical problems as a result of being indoors for an extended period and *then* imposed another extended period of outdoor restrictions. Here, however, because these issues were not presented to the relevant prison staff, Gruenberg never gave them the chance to remedy any constitutional wrong.

Gruenberg argues that he did exhaust his administrative remedies because in February 2010 he filed a grievance under the Inmate Complaint Review System. Shortly after being transferred to Columbia Correctional, Gruenberg filed an ICRS complaint alleging that the eleven and one-half months of outdoor activity restrictions at GBCI had caused him headaches, lethargy, muscle pains and other symptoms. (Gozinske Aff., Ex. 2 at 6.) This complaint was rejected on the basis that it had not been filed within the fourteen-day time limit provided by regulation. *See* Wis. Admin. Code § DOC 310.11(5)(d).

The ICRS complaint does not constitute proper exhaustion. First, the final punishment that imposed an outdoor restriction occurred on October 16, 2009 – four months before Gruenberg filed his ICRS complaint. Thus, the ICRS complaint filed in February 2010 in no way alerted any of the Defendants that imposing further outdoor restrictions would cause Gruenberg mental and physical harm. The complaint examiner thus properly rejected the complaint on that basis alone. In addition, it is clear from Gruenberg's allegations that the symptoms he complained about (the symptoms that,

6

if known, could give rise to a constitutional violation) did not just arise in his final fourteen days of confinement. In October 2009, for example, he submitted a health services request citing headaches, blurred vision and muscle problems arising out of his lack of outdoor exercise. (Compl., Ex. W.)

Plaintiff suggests that it would make no sense for him to have filed an inmate complaint about being kept inside for a year until the year was up, but that argument has things backwards. The time for filing a grievance is *during* or immediately after the problem manifests itself, not once the problem is cured. How could officials at Columbia Correctional have rectified matters relating to Gruenberg's confinement at GBCI? It would be another case altogether if Gruenberg had filed a complaint in, say, January 2010 while still at GBCI. If the examiner then rejected such a complaint on timeliness grounds, Gruenberg might have an argument that the violation he alleged was ongoing and thus not subject to the 14-day limit. *See, e.g., Simpson v. Greenwood,* 2007 WL 5445538, *6 (W.D. Wis. 2007). In such a case, the relevant prison officials would have an opportunity to cure the alleged problem, which is the entire purpose of the exhaustion requirement. This is especially true when the violation arises out of a situation that is progressing slowly, such as the allegations here that the continued indoor incarceration was having a cumulative effect. In such a case, it would be difficult to pinpoint the onset of the alleged violation and thus equally difficult to impose a time limit on filing a grievance. But that is another case. Here, no relief was available to Gruenberg because he filed after he was transferred to another prison and the ban on outdoor exercise was lifted. Once the transfer was effective, there was no ongoing violation and no opportunity for anyone to cure the alleged violation. Accordingly, I conclude that Gruenberg failed to properly exhaust his administrative remedies.

**III. Eighth Amendment**

Although I concluded that Gruenberg failed to properly exhaust his administrative remedies, I will briefly address the merits because the above discussion highlights why there was no constitutional violation in this case. Above I concluded that Gruenberg had never communicated his health concerns in any of his appeals, and he filed his ICRS complaint only when he got to a new prison. In addition to the fact that this means he failed to properly exhaust his remedies, it also means that none of the five Defendants ever knew that Gruenberg was experiencing health issues related to his confinement. As noted above, under *Pearson* there was nothing inherently unconstitutional in requiring Gruenberg to serve multiple consecutive periods of time without outdoor recreation. It is only if some special circumstance existed – such as the illness of an inmate that would be mitigated by outdoor activity – that liability would exist. But in addition to that factor a plaintiff must also show that the named defendants actually had knowledge of his particular circumstances. Here, none of his communications with the Defendants alerted them to the health issues he now alleges. Thus, even if Gruenberg is believed, none of the Defendants could be found to be deliberately indifferent to Gruenberg's condition because none of them *knew* about his condition. *Minix v. Canarecci,* 597 F.3d 824, 831 (7th Cir. 2010) ("Absent any knowledge of Zick's risk of suicide, it cannot be said that Lonz was deliberately indifferent to that risk.") Accordingly, in addition to the procedural reasons cited above, the claim fails on the merits as well.[1]

---

[1] In a declaration, Gruenberg states that in December 2009 he verbally asked Capt. Schultz "How do I go about alleviating my muscle soreness and acute claustrophobia that stems from all this loss of rec I'm on?" (Dkt. # 23 at 8.) Even if Schultz could be said to have knowledge of Gruenberg's condition from that point on, Schultz did not impose any additional punishments after December 2009. Gruenberg was soon transferred and the problem was resolved. Moreover, this underscores the fact that his claim was "ripe" long before February 2010 and highlights the need for proper exhaustion in a timely fashion: filing a grievance two months later at a different prison was not an effective course of action for Gruenberg to take.

8

**IV. Conclusion**

For the reasons given above, the Defendants' motion for summary judgment is **GRANTED** and the case is **DISMISSED**. Plaintiff's motion to "incorporate discovery materials into the record" is **DENIED** as unnecessary. The record consists of all submissions made to the Court and is reflected on the docket.

**SO ORDERED** this  4th  day of October, 2011.

 s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge